**In re LION CAPITAL GROUP, et al., Debtors.**

**Stanley T. LESSER, Trustee for Hamilton Gregg Monetary Management Limited, Plaintiff,**

**v.**

**A–Z ASSOCIATES, et al., Defendants.**

**Stanley T. LESSER, Trustee for Hamilton Gregg Asset Management Limited, Plaintiff,**

**v.**

**931 INVESTORS, et al., Defendants.**

**Stanley LESSER, As Chapter 11 Trustee of Lion Capital Group, et al., Plaintiff,**

**v.**

**Hamilton S. GREGG II, the Gregg Group, Inc., Hamilton Gregg & Company, Inc., Cambridge-American Group, Inc., and American Co., Defendants.**

Bankruptcy Nos. 84–B–10668 (HCB), 84–B–10672 (HCB).

Adv. Nos. 84–5996A (HCB), 84–5997A (HCB) and 84–6037A (HCB).

United States District Court, S.D. New York.

April 11, 1985.

Kaye, Scholer, Fierman, Hays & Handler, New York City, for plaintiff; Milton Sherman, Richard M. Steuer, Bruce Margolius, Dustin F. Hecker, New York City, of counsel.

Stroock & Stroock & Lavan, New York City, for defendants Listed on Schedule A Annexed to Notice of Motion; Melvin A. Brosterman, Curtis C. Mechling, Thomas Farber, Mark Speiser, New York City, of counsel.

Dornbush, Mensch & Mandelstam, New York City, for Hamilton S. Gregg, II; Karl Savryn, Sidney Gribetz, New York City, of counsel.

## OPINION

GOETTEL, District Judge:

Presently before the Court are motions to withdraw the references to the bankruptcy court of certain adversary proceedings. This raises questions about the jurisdictional boundaries between the district courts and the bankruptcy courts under newly-enacted bankruptcy legislation.

## I. BACKGROUND

On or around May 1, 1984, five related entities filed for relief under chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code" or "Title 11"): Lion Capital Group, Lion Capital Associates ("Lion Capital"), Blackburn Associates ("Blackburn"), Hamilton Gregg Asset Management Limited ("Gregg Asset"), and Hamilton Gregg Monetary Management Limited ("Gregg Monetary") (collectively the "Debtors").[1] Subsequently, on May 3,

---

**1.** Lion Capital was formed on November 25, 1981, with Gregg Asset as its sole general partner. Limited partners invested in Lion Capital on or after this date.

Blackburn was formed on October 8, 1982, with Gregg Monetary and Rollin H. Needham as its general partners. Limited partners invested in Blackburn on or after this date.

Hamilton S. Gregg, II, was the Chairman of the Board, Chief Executive Officer, and a principal of Gregg Asset and Chairman of the Board and Chief Executive Officer of Gregg Monetary, until 1983, when his interests in these two entities were transferred to Needham.

Needham formed Lion Capital Group, a New York general partnership, with Needham, Lion Capital, and Blackburn as its general partners.

1984, Stanley T. Lesser was appointed chapter 11 trustee (the "Trustee") of each of the Debtors.

On June 29, 1984, the Trustee, as trustee for Gregg Monetary, commenced an adversary proceeding in the bankruptcy court against 43 persons, each of whom is a limited partner in Blackburn. *Lesser v. A–Z Associates*, Adversary Proceeding No. 84–5996A. On the same date, the Trustee, as trustee of Gregg Asset, commenced a parallel adversary proceeding in the bankruptcy court against 40 persons, each of whom is a limited partner in Lion Capital. *Lesser v. 931 Investors*, Adversary Proceeding No. 84–5997A. On August 1, 1984, the Trustee, as trustee of all the Debtors, commenced an adversary proceeding against Hamilton S. Gregg, II, and four related corporate entities. *Lesser v. Gregg*, Adversary Proceeding No. 84–6037A. In each of these proceedings, most of the defendants, if not all, filed answers.

In this Court, most of the defendants [2] in the adversary proceedings filed motions seeking orders pursuant to 28 U.S.C.A. § 157(d) (West Supp. Sept. 1984) withdrawing the references to the bankruptcy court of the adversary proceedings and assigning the adversary proceedings to the district court judge who is presiding over certain related actions.

## II. THE BANKRUPTCY AMENDMENTS AND FEDERAL JUDGESHIP ACT OF 1984

The instant motions are governed by the recent amendment to the Bankruptcy Code: Bankruptcy Amendments and Federal Judgeship Act of 1984, enacted on July 10, 1984, (the "1984 Act"). The 1984 Act is the culmination of two years of congressional efforts to remedy the constitutional infirmities in the Bankruptcy Code found by the Supreme Court in *Northern Pipeline Con-*

*struction Co. v. Marathon Pipe Line Co.*, 458 U.S. 50, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982). *See generally* 1984 U.S.Code Cong. & Ad.News 590, 602–06 (June 29, 1984) (statement of Honorable Orrin G. Hatch).

In *Marathon*, the Supreme Court decided that bankruptcy judges cannot adjudicate claims or causes of action based upon state or common law, on the ground that the jurisdictional grant to a bankruptcy court to adjudicate such claims was a grant of judicial power which could only be exercised by an Article III court. The 1984 Act deals with the *Marathon* problem by distinguishing between "core" proceedings and claims under Title 11, and "non-core" proceedings or claims "related" to Title 11 cases, namely claims arising under traditional state law which must be determined by state law.

Pursuant to 28 U.S.C. § 1334, as amended by the 1984 Act, the district court has "original and exclusive jurisdiction of all cases under Title 11," and has "original but not exclusive jurisdiction of all civil proceedings arising under Title 11, or arising in or related to cases under Title 11." [3] 28 U.S.C.A. § 1334(a) & (b) (West Supp. Sept. 1984). (All such cases and proceedings are hereinafter referred to collectively as "bankruptcy matters.") Under 28 U.S.C.A. § 157(a) (West Supp. Sept. 1984), each district court may provide that any or all bankruptcy matters under Title 11 (core and non-core proceedings) shall be referred to the bankruptcy judges for the district. By order dated July 10, 1984, the Honorable Robert J. Ward, Acting Chief Judge for the United States District Court for the Southern District of New York, made a blanket reference of all bankruptcy matters to the bankruptcy judges of this district.

The remainder of section 157 sets forth the manner in which the bankruptcy courts

---

Needham has since filed a personal bankruptcy petition with the United States Bankruptcy Court for the District of Connecticut.

2. To be precise the movants are 69 of the 83 defendants in *Lesser v. A–Z Associates* and *Lesser v. 931 Investors*, and 1 (Gregg) of the 5 defendants in *Lesser v. Gregg*.

3. The district court has jurisdiction over bankruptcy matters that were pending at the date of the enactment of the 1984 Act. The Bankruptcy Amendments and Federal Judgeship Act of 1984, Pub.L. No. 98–353, § 115, 98 Stat. 343.

and the district courts are to deal with core and non-core proceedings.[4] Pursuant to section 157(b)(1), bankruptcy judges may hear and enter final orders in all cases under Title 11 and in all core proceedings, subject to review under section 158.[5] This review encompasses the traditional standard of appellate review.[6]

Pursuant to section 157(c), bankruptcy judges may also hear proceedings that are not core proceedings but that are otherwise related to a case under Title 11.[7] Non-core proceedings, however, are dealt with in a manner similar to references to magistrates under the Federal Magistrates Act, 28 U.S.C. §§ 631–639 (1982). Under section 157(c), bankruptcy judges may hear a non-core proceeding but may not enter a final order unless the parties consent. Absent consent, the bankruptcy judge submits proposed findings of fact and conclusions of law to the district court. In turn, the district court shall enter a final decision after considering the proposed findings of fact

and conclusions of law but on objections as to any matter, the district court shall review the matter *de novo*. In reviewing matters *de novo*, the district court is required to make an independent assessment of the issues. *See Moody v. Amoco Oil Co.*, 734 F.2d 1200, 1210 (7th Cir.), *cert. denied*, —— U.S. ——, 105 S.Ct. 386, 83 L.Ed.2d 321 (1984) (decided under the emergency rule which existed prior to the effective date of the 1984 Act).

Finally, section 157(d) permits the district court to withdraw either core or non-core proceedings from the bankruptcy court on its own motion or upon a motion of a party, and sets forth the circumstances under which such a withdrawal is compelled. The provision states that

[t]he district court may withdraw, in whole or in part, any case or proceeding referred under this section, on its own motion or on timely motion of any party, for cause shown. The district court shall, on timely motion of a party, so withdraw a proceeding if the court deter-

---

**4.** As noted by one court, "the necessary limitations on bankruptcy court jurisdiction and bankruptcy judges' power 'result in construction of a jurisdiction maze that gives up to six different options for where any particular dispute is to be tried.'" *In re White Motor Corp.*, 42 B.R. 693, 697 (N.D.Ohio 1984) (quoting 130 Cong. Rec. H7490 (daily ed. June 29, 1984) (remarks of Rep.Edwards)).

**5.** Section 157(b)(1) provides:

Bankruptcy judges may hear and determine all cases under title 11 and all core proceedings arising under title 11, or arising in a case under title 11, referred under subsection (a) of this section, and may enter appropriate orders and judgments, subject to review under section 158 of this title.
28 U.S.C.A. § 157(b)(1) (West Supp. Sept. 1984).

**6.** Section 158 provides:

(a) The district courts of the United States shall have jurisdiction to hear appeals from final judgments, orders, and decrees, and, with leave of the court, from interlocutory orders and decrees, of bankruptcy judges entered in cases and proceedings referred to the bankruptcy judges under section 157 of this title. An appeal under this subsection shall be taken only to the district court for the judicial district in which the bankruptcy judge is serving.

*   *   *   *   *   *

(c) An appeal under subsections (a) and (b) of this section shall be taken in the same manner as appeals in civil proceedings generally are taken to the courts of appeals from the district courts and in the time provided by Rule 8002 of the Bankruptcy Rules.

(d) The courts of appeals shall have jurisdiction of appeals from all final ·decisions, judgments, orders, and decrees entered under subsections (a) and (b) of this section.
28 U.S.C.A. § 158 (West Supp. Sept. 1984).

**7.** Section 157(c) provides:

(1) A bankruptcy judge may hear a proceeding that is not a core proceeding but that is otherwise related to a case under title 11. In such proceeding, the bankruptcy judge shall submit proposed findings of fact and conclusions of law to the district court, and any final order or judgment shall be entered by the district judge after considering the bankruptcy judge's proposed findings and conclusions and after reviewing de novo those matters to which any party has timely and specifically objected.

(2) Notwithstanding the provisions of paragraph (1) of this subsection, the district court, with the consent of all the parties to the proceeding, may refer a proceeding related to a case under title 11 to a bankruptcy judge to hear and determine and to enter appropriate orders and judgments, subject to review under section 158 of this title.
28 U.S.C.A. § 157(c) (West Supp. Sept. 1984).

mines that resolution of the proceeding requires consideration of both title 11 and other laws of the United States regulating organizations or activities affecting interstate commerce.

28 U.S.C.A. § 157(d) (West Supp. Sept. 1984).

The movants request this Court to withdraw the references of the adversary proceedings to the bankruptcy court. They argue that the efficient administration of justice warrants the withdrawal of the references so that the adversary proceedings may be heard together with related actions in the district court. The movants contend that the sound exercise of this Court's discretion warrants the withdrawal.

Should the Court determine not to so exercise its discretion, the movants of the *A–Z Associates* and *931 Investors* adversary proceedings further contend that, as a matter of law, the references of those proceedings should be withdrawn. These defendants argue that these adversary proceedings involve consideration of both Title 11 and other laws of the United States regulating activities affecting interstate commerce. Thus, argue the defendants, the references must be withdrawn as required by the second sentence of section 157(d).

The plaintiff, Lesser, as trustee for the Debtors, opposes the motions to withdraw for various reasons.

To effectively decide these motions, the Court must review the pleadings of the three adversary proceedings and the two allegedly related district court actions.[8]

## III. THE COURT ACTIONS

### A. The Adversary Proceedings

#### 1. *Lesser v. Gregg*

Hamilton S. Gregg, II, and four related corporate entities—The Gregg Group, Inc. ("Gregg Group"), Hamilton Gregg & Company, Inc. ("Gregg & Co."), Cambridge-American Group, Inc., and Cambridge-American Co.—are the defendants in this adversary proceeding.[9]

On December 20, 1982, Gregg Group executed a promissory note in the amount of $250,000, payable on demand to the order of Gregg Monetary. Gregg personally guaranteed this note. On December 21, 1982, Gregg & Co. executed a promissory note in the amount of $500,000, payable on demand to the order of Gregg Asset. Gregg also personally guaranteed this note. The two promissory notes allegedly represented a significant part of the paid-in-capital of Blackburn and Lion Capital.

On April 5, 1983, Gregg, Caroly Gregg (Gregg's wife), and Needham entered into a Redemption and Stock Sale Agreement (the "Agreement") by which Gregg transferred to Needham his interest in Gregg Group and related companies (including Lion Capital, Blackburn, Gregg Asset, Gregg Monetary, and Gregg & Co.). This Agreement purported to create a security interest on behalf of Gregg in "all the assets now or hereafter owned by each Needham Entity," with Needham Entities defined to include Lion Capital, Blackburn, Gregg Asset, and Gregg Monetary. *Lesser v. Gregg* Complaint ¶ 15. Also, pursuant to the Agreement, each Needham Entity purported to agree to reimburse Gregg with respect to any payments by Gregg as guarantor of the above-mentioned notes.

On May 24, 1984, the Trustee, as trustee for Gregg Monetary, made written demands on Gregg Group and Gregg for payment on the December 20, 1982, note. On the same date, the Trustee, as trustee for Gregg Asset, made written demands on

8. The following summary is drawn from the pleadings submitted by the parties to the bankruptcy court and this Court. The majority of the facts are culled from the complaints but this is no reflection as to their truth or falsity.

9. Gregg was the Chairman and Chief Executive Officer of the Gregg Group and of Gregg & Co. He was also the sole shareholder of Gregg Group which was the sole shareholder of Gregg & Co. These two entities were transferred to Needham in 1983. On or about May 2, 1984, Gregg Group and Gregg & Co. adopted new corporate names—Cambridge-American Group, Inc., and Cambridge-American Co., respectively.

Gregg & Co. and Gregg for payment of the December 21, 1982, note.. No payment has been received on either note.

On August 1, 1984, the Trustee brought an action against Gregg and the four related corporate entities seeking to bring into the estate, *inter alia*, $750,000, plus interest, attorney fees, and costs of collection based on the two notes. In addition, the Trustee seeks to recover various fraudulent and preferential transfers made to Gregg pursuant to the Agreement. The suit also attacks the security interest purportedly created in Gregg's favor by the Agreement.

In his answer, defendant Gregg denies the material facts of the Trustee's complaint and asserts a host of defenses and counterclaims. In the various affirmative defenses, Gregg alleges that the purported guarantees of the promissory notes are unenforceable. Based on various provisions of the Agreement, the counterclaims all seek setoffs against any claim by the Trustee and/or judgments against the Trustee and the Debtors in the amount which may be due on the purported guarantees.

2. *Lesser v. A–Z Associates* and *Lesser v. 931 Investors*

The defendants in these two adversary proceedings hold limited partnership interests, respectively, in Blackburn and Lion Capital, having executed agreements of limited partnership in or around December 1981 (Lion Capital) or December 1982 (Blackburn). Pursuant to the partnership agreements, each limited partner obligated himself to make additional capital contributions for recourse obligations up to 300% (Blackburn) or 400% (Lion Capital) of his initial contribution.[10] These additional contributions were to be paid within thirty days after receiving a written notice of call by the managing general partner of the partnerships. Gregg Monetary serves as managing general partner for Blackburn and Gregg Asset serves in the same capacity for Lion Capital.

According to the complaints, on May 18, 1984, the Trustee, on behalf of Gregg Monetary and Gregg Asset, transmitted by registered mail to each defendant a written demand for the additional capital contributions required of each defendant. Each defendant failed to make any additional capital contributions within the prerequisite thirty days, or at any time thereafter. On June 27, 1984, the Trustee transmitted to each defendant a written notice of default.

On June 29, 1984, the Trustee commenced the adversary proceedings in the bankruptcy court. In these proceedings, the Trustee seeks to compel the defendants to comply with the obligations under the partnership agreements and thus to bring the proceeds into the debtors' estate. As stated in the complaints, "each defendant has wrongfully breached the [Partnership] Agreement and should be required to pay forthwith the amount due and owing thereunder, with interest thereon, from the time of default." *Lesser v. A–Z Associates* Complaint ¶ 11 and *Lesser v. 931 Investors* Complaint ¶ 11.

Simultaneously with the filing of the instant motion to withdraw, the moving defendants filed their answers to the Trustee's complaints. In their answers, these defendants denied nearly all material allegations and asserted numerous defenses and counterclaims (45 affirmative defenses and 35 counterclaims in *A–Z Associates* and 50 affirmative defenses and 40 counterclaims in *931 Investors*). (The affirmative defenses overlap the counterclaims.)

The counterclaims proceed in all instances by alleging that Gregg Asset or Gregg Monetary and various affiliates made six-

---

**10.** Recourse obligations are defined in the partnership agreement as follows:

"*Recourse Obligation*" means any obligation(s) as to which a creditor of the Partnership may look to the Limited Partners, severally, for repayment, including but not limited to liabilities which are direct obligations of the Limited Partners incurred on their behalf by the General Partner pursuant to the authority granted under Section 6 3 of this Agreement.

*Lesser v. A–Z Associates* Complaint, Exhibit B, Amended and Restated Agreement of Limited Partnership of Blackburn Associates, ¶ 1.17 at 4.

teen misrepresentations in connection with the sale of the limited partnership interests. On the basis of the allegations, it is claimed that Gregg Asset and Gregg Monetary are liable for common law fraud and negligent misrepresentation, and for violating sections 12 and 17(a) of the Securities Act of 1933, section 10(b) of the Securities Exchange Act of 1934 and Rule 10b–5 promulgated thereunder, sections 4b, 4m, and 4o of the Commodity Exchange Act, sections 36 and 48 of the Investment Company Act, and the Racketeer Influenced and Corrupt Organizations Act ("RICO"). The allegations of fraud are repleaded in additional counterclaims asserting that the sale of the partnership interests violated applicable state blue-sky laws governing the registration of securities offerings.

Subsequently, the Trustee moved to dismiss the majority of the defenses and counterclaims in both proceedings. On December 3, 1984, the bankruptcy judge, Judge Buschman, granted the Trustee's motion and dismissed, with leave to replead, all but two of the defenses and counterclaims. *See Lesser v. A–Z Associates,* 44 B.R. 690 (Bankr.S.D.N.Y.1984).

### B. The District Court Actions

On or around June 25, 1984, substantially all of the limited partners of Blackburn and of Lion Capital (the moving defendants in the *A–Z Associates* and *931 Investors* adversary proceedings) commenced two parallel actions in the district court (the "District Court actions"). In the first, *Blanz v. Gregg,* 84 Civ. 4449, the limited partners of Blackburn assert claims against Gregg, Needham, The Gregg Group, Inc., and Hamilton Gregg Securities Corporation. In the second, *Anderson v. Gregg,* 84 Civ. 4450, the limited partners of Lion Capital allege substantially identical claims against the same defendants in addition to Hamilton Gregg Venture Capital, Inc.

The defendants in the District Court actions are persons who directly, or through their control of others, were involved in the formation of Lion Capital and Blackburn, and the offer and sale of limited partnership interests therein to the plaintiffs in those actions. None of the defendants are debtors in the bankruptcy cases. The complaints charge the defendants with, among other things, violations of the antifraud and registration provisions of the federal securities laws, federal commodities law, various state securities laws, RICO, and common law in connection with the sale of securities in the form of limited partnership interests in Lion Capital and Blackburn. In all, those two complaints set forth 53 claims for relief arising under 10 federal statutory provisions, 33 state statutory provisions, and common law. These claims for relief are identical to 50 of the defenses and 48 of the counterclaims in the *A–Z Associates* and *931 Investors* adversary proceedings.[11]

The Trustee requested the bankruptcy judge to stay the moving defendants in the *A–Z Associates* and *931 Investors* adversary proceedings from prosecuting the District Court actions. On December 3, 1984, the bankruptcy judge granted the motion. *See id.*

## IV. SECTION 157(d) AND WITHDRAWAL OF REFERENCES TO THE BANKRUPTCY COURT

### A. Discretionary Withdrawal of References

Section 157(d) permits the district court to withdraw, for cause, a proceeding re-

---

**11.** The Court takes note of the following sequence of events. On May 18, 1984, the Trustee demanded additional contributions from the limited partners of Blackburn and of Lion Capital. In his opposing papers to the partners' motion, the Trustee states that at the request of counsel for the limited partners, the Trustee's attorneys informed them that demand letters were about to be mailed and that a proceeding was about to be commenced. On or around June 25, 1984, the majority of these partners began two parallel actions in the district court. The Trustee sent each partner a notice of default on June 27, 1984, and began adversary proceedings on June 29, 1984, to compel the partners to pay. In response to the Trustee's complaints, the moving defendants filed answers with numerous defenses and counterclaims strikingly similar to their complaints filed in the district court. At the same time, these defendants filed their motion to withdraw.

ferred to the bankruptcy court. The movants contend that there is adequate cause for withdrawing the adversary proceedings. We do not agree.

### 1. *Lesser v. Gregg* Adversary Proceeding

■ Gregg initially contends that the first and second causes of action in which the Trustee seeks recovery on two promissory notes guaranteed by Gregg are non-core claims. Therefore, the district court must review *de novo* the bankruptcy judge's proposed findings and conclusions on these two claims. To avoid such duplication of judicial effort, argues Gregg, is reason alone to withdraw the reference. The Court cannot agree.

First, Gregg's view of the proceeding is too narrow. The Trustee has asserted nine causes of action against Gregg. Seven seek to recover on fraudulent transfers or transactions and are core claims. *See* 28 U.S.C.A. § 157(b)(2)(H) (West Supp. Sept. 1984). Two causes of action seek recovery on promissory notes and are non-core claims. *See Lesser v. Gregg* Complaint ¶ 3. Gregg has raised a host of defenses and counterclaims. The counterclaims seek set-offs and/or judgment against the Trustee and the Debtors. Any relief Gregg receives would either diminish the amount of assets the estate would collect for eventual distribution to creditors, or would result in distributing assets of the estate to Gregg to satisfy the judgment. Although not termed as such, these prepetition claims against the estate, and any proceedings with respect to them, could perhaps be viewed as core within the meaning of section 157(b)(2)(B). In any event, this proceeding is not as narrow as Gregg would like us to believe. Rather, the bulk of the proceeding involves core claims for which there is no possibility of *de novo* review.

Moreover, the mere availability of a *de novo* review is not sufficient cause to withdraw a reference to the bankruptcy court. Such an interpretation would lead to the automatic withdrawal of any case in which a non-core claim was in any way involved.

Such a result was not intended by Congress when it enacted the 1984 Act.

Section 157 does not enumerate the situations in which a proceeding can be withdrawn for cause. The legislative history is also silent. The import of sections 157(c)(1) and 157(d), however, indicates that Congress intended the bankruptcy court to hear all proceedings initially, subject to review by the district court of those matters over which the bankruptcy court could not enter final judgments. Section 157(c)(1) contemplates that the district court will have the benefit of the bankruptcy judge's findings of fact and conclusions of law, even with respect to those matters to be reviewed *de novo*.

The system is analogous to the procedures with the United States magistrates. *See* 28 U.S.C. §§ 631–639 (1982). As Representative Kastenmeier (a co-sponsor of section 157) explained when section 157 as enacted was first introduced:

> The amendment that I offer is very simple. It gives the Federal district courts broad jurisdiction over bankruptcy matters. The existing bankruptcy judges would assist the district courts in these cases, very much like magistrates now help district courts handle criminal and civil cases.

> These bankruptcy judges would be able to enter final judgments in about 95 percent of the cases that do not require an involvement by an article 3 judge. In the remaining 5 percent of bankruptcy cases, the bankruptcy judge would enter a proposed judgment and the district court, after reviewing the record but without holding a second hearing, could promptly enter a final judgment.

130 Cong.Rec. H1846 (daily ed. March 21, 1984) (statement of Rep. Kastenmeier). Representative Kindness (the other co-sponsor of section 157) also emphasized this aspect:

> The district court may refer all bankruptcy matters to bankruptcy judges. Bankruptcy judges will be able to enter a final judgment in much the same way as an article 3 judge would in all proceed-

ings integral to the core bankruptcy functioning of restructuring the obligations of the debtor and his creditors.

A survey performed in the ninth circuit found that 95 percent of bankruptcy matters are core proceedings. In the remaining 5 percent of the cases, the bankruptcy judge will act much like a magistrate.

The bankruptcy judge will conduct the trial, make a recommendation to the district court; the district court must review the transcript before entering judgment; but as under the Magistrates Act, the district judge need not conduct a second trial, and where the parties consent, the bankruptcy judge may enter a judgment as in a core bankruptcy proceeding.

As now, all judgments entered by a bankruptcy judge will be subject to appellate review by the district court, and as now, final judgments entered by the district court will be subject to review by the court of appeals.

130 Cong.Rec. H1848 (daily ed. March 21, 1984) (statement of Rep. Kindness).

Under the Federal Magistrates Act, a district court judge may refer matters to a magistrate for a hearing. The magistrate in turn submits proposed findings of fact and recommendations for the district court's review. *De novo* review of those matters to which a party specifically objects is part of the district court's review process. *See* 28 U.S.C. § 636(b)(1)(C) (1982). This review has not been found as a means of attacking the references to magistrates.

We cannot conclude from the statutory scheme that Congress intended to allow a party to avoid bankruptcy jurisdiction through section 157(d) by asserting that it might invoke the *de novo* review procedures of section 157(c)(1). Such a conclusion would lead to an avoidance of the bankruptcy courts in a great many proceedings.

■ Gregg states that there is a second, even more compelling, reason to withdraw the reference. He contends that the adversary proceedings and the District Court actions arise out of the same transactions and involve common questions of law and fact. Therefore, argues Gregg, efficient administration dictates that the reference of the adversary proceeding be withdrawn and the proceeding referred to the district court judge presiding over the District Court actions.

The actions are not strikingly similar. They arise out of different transactions and involve different questions of law and fact. The District Court actions involve the circumstances surrounding the sale and offer of the partnership interests in Lion Capital around December 1981 and in Blackburn around December 1982. The complaints allege violations of federal securities laws, state blue-sky laws, and common law. Each cause of action charges the defendants with making fraudulent statements to induce the limited partners to invest in the limited partnerships. The claims and counterclaims in the *Gregg* adversary proceeding arise out of different transactions occurring at different times and places, and involving different parties. This proceeding involves the execution of two promissory notes by Gregg Group and Gregg & Co. that Gregg guaranteed in December 1982, and the execution of a sale agreement between Gregg, his wife, and Needham on April 5, 1983. The issues in this proceeding are different from the District Court actions. Any similarity between the actions is nebulous.

Moreover, if we were to withdraw the reference and refer the adversary proceeding to the district court judge presiding over the District Court actions, there is no guarantee that that judge will accept the reference and consolidate it with the District Court actions. Thus, there is a possibility that efficient administration will be hindered rather than furthered.[12]

---

12. It is not entirely clear why this case was not assigned to the district judge who already had

before him the civil actions mentioned above. The Emergency Bankruptcy Rules do not de-

**338**

We deny Gregg's motion to withdraw the reference of the *Gregg* adversary proceeding for the reasons stated above.

### 2. *A–Z Associates* and *931 Investors* Adversary Proceedings.

The movants in these two proceedings also contend that efficient administration of justice warrants the withdrawal of the references. They first argue that the adversary proceedings are state law breach of contract actions which are non-core proceedings. Thus, the district court will review *de novo* the bankruptcy judge's findings. So, to avoid duplication of judicial effort, argue the movants, the Court should grant the motion to withdraw.

This argument is weakened by a subsequent decision of the bankruptcy judge. In an opinion dated February 12, 1985, Judge Buschman determined that these adversary proceedings are core proceedings. *See Lesser v. A–Z Associates*, 46 B.R. 850 (Bankr.S.D.N.Y.1985). If the proceedings are core, the bankruptcy judge may hear and determine the proceedings and may enter appropriate orders and judgments,

subject to review under section 158. 28 U.S.C.A. § 157(b)(1) (West Supp. Sept. 1984). Review under section 158 does not involve *de novo* review. It is handled like an appeal to the appellate court.

■ By letter dated March 1, 1985, counsel for the movants indicated that on February 22, 1985, they filed a notice of appeal from Judge Buschman's order. They further indicated that this Court will have to hear the appeal and decide whether the adversary proceedings are core proceedings. They contend that Judge Buschman's decision has no binding effect on this Court.[13]

■ Section 157(b)(3) empowers the bankruptcy judge to determine whether a proceeding is a core or non-core proceeding.[14] Such a determination is binding, subject only to conventional appellate review. W. Norton & R. Lieb, *Jurisdiction and Procedure Under the 1984 Bankruptcy Amendments* 88–89 (March 1, 1985) (to be published in W. Norton, 7 *Bankruptcy Law and Practice* ).[15] Here, Judge Busch-

---

scribe how, when bankruptcy matters are referred to the district court, the district court judge is selected. (This case was assigned in the district court with a bankruptcy number.) However, Rule 15 of the Local Rules for the Division of Business Among District Judges covers the assignment of related cases. The actual assignment of this matter was done "pursuant to the instructions of the Assignment Committee." Notice of Assignment. Pursuant to Rule 2 of the Local Rules for the Division of Business Among District Judges, the assignment committee rules upon matters relating to assignments in accordance with these rules. The considerations that led to this assignment are not known.

**13.** In the letter, the movants renew their application to withdraw the reference because this will further the efficient administration of justice and contend that "[i]ndeed, the practical consequence of the withdrawal of the reference is that it should obviate the need for the prosecution and resolution of appeals from the bankruptcy judge's determination that the proceedings below are core proceedings...." Such grounds are not a reason to withdraw a reference. Determinations by a court may be appealed; but that is not cause for a higher court to take the case away from a lower court. Lower courts, including the bankruptcy courts, serve an important and vital function in the administration of justice. *Cf. Sick v. City of*

*Buffalo, New York,* 574 F.2d 689, 692–93 (2d Cir.1978) (footnotes omitted) ("District court review after a trial before a magistrate or master is not a meaningless exercise. Rather, the procedure comports with the fundamental congressional policy underlying the Magistrates Act—to *aid* the courts in their ultimate decisionmaking function.").

**14.** "The bankruptcy judge shall determine, on the judge's own motion or on timely motion of a party, whether a proceeding is a core proceeding under this subsection or is a proceeding that is otherwise related to a case under title 11." 28 U.S.C.A. § 157(b)(3) (West Supp. Sept. 1984).

**15.** The authors' position of this commentary is that

[t]he § 157(b)(3) classification order is itself a "core" proceeding to determine whether the underlying proceeding is or is not a "core" proceeding, for such classification is evident from the fact that § 157(b)(3) empowers the bankruptcy judge to "determine" the classification issue. As a "core" proceeding, the classification order is reviewed under the standard of Bankruptcy Rule 8013 which makes bankruptcy judges' findings "final" unless "clearly erroneous".

W. Norton & R. Lieb, *Jurisdiction and Procedure Under the 1984 Bankruptcy Amendments* 88

man has determined that the *A–Z Associates* and *931 Investors* adversary proceedings are core. We cannot agree with the movants that this ruling is not binding on us now. Although the movants contend that they have filed an appeal from this determination which we must hear, we have received neither the notice nor the parties' briefs. Until such time as the Court receives the appeal and is fully briefed on the various issues underlying Judge Buschman's decision, we decline to take a position on whether the adversary proceedings are core or non-core proceedings and we now abide by Judge Buschman's determination.

■ The movants next argue that there is an even more compelling reason to withdraw the references. They contend that the adversary proceedings and the District Court actions involve identical questions of law and fact and are virtually all based upon the same operative facts. Therefore, conclude the movants, efficient administration of these cases and the need to avoid inconsistent determinations dictate that the references of the adversary proceedings be withdrawn and the proceedings referred to the district court judge presiding over the District Court actions.

The complaints in the District Court actions and the counterclaims and defenses in the adversary proceedings are practically mirror images of one another. However, the bankruptcy judge dismissed, with leave to replead, all but two of the counterclaims and defenses in the adversary proceedings.[16] Thus, the actions are no longer similar. The movants submit that we should not rely on the bankruptcy judge's decision in any regard in deciding the motion. They then set forth various grounds

as to why the decision is unsound. Whether the decision is flawed, however, is not at issue before us. As discussed above, these proceedings are core. Therefore, the decisions of the bankruptcy court are to be reviewed under the appellate reviewing procedures, which have not been followed.[17] Thus, we should view the proceedings as they presently stand.[18] Since the adversary proceedings and the District Court actions are no longer similar, there is no cause to withdraw the references.

The movants contend that the motion to withdraw the references will have to be revisited if we deny their present motion and the pleadings are sustained by a higher court or are amended. This is, however, the appropriate route. We decline to withdraw the references of the adversary proceedings based upon defective pleadings. Since we do not know what new pleadings, if any, will be set forth, it would be imprudent at this time to grant the motion. We find no cause to exercise our discretion and withdraw the references.

### B. Mandatory Withdrawal of References

Section 157(d) requires the district court to withdraw a proceeding if it determines that "resolution of the proceeding requires consideration of both title 11 and other laws of the United States regulating organizations or activities affecting interstate commerce." 28 U.S.C.A. § 157(d) (West Supp. Sept. 1984). To trigger this provision, it is necessary (1) that the "other" law to be considered be a federal law that "regulates" either an organization or activity that affects interstate commerce and (2) that the resolution of the proceeding requires the consideration of provisions of both Title 11 and such other federal laws.

---

(March 1, 1985) (to be published in W. Norton, 7 *Bankruptcy Law and Practice*).

**16.** The two remaining counterclaims and defenses have no parallel claims in the District Court actions.

**17.** The Court finds no fault in this regard because the bankruptcy judge determined that the proceedings were core proceedings after the

motion to withdraw was submitted to this Court.

**18.** As Judge Buschman stated in his opinion dismissing the counterclaims, "[i]n ruling on a withdrawal motion, the district court should be presented with a case or proceeding as it is, not as it has been stylized through deficient pleadings." *Lesser v. A–Z Associates*, 44 B.R. 690, 694 (Bankr.S.D.N.Y.1984).

The movants in the *A–Z Associates* and *931 Investors* adversary proceedings argue that the references of those proceedings should be withdrawn. They contend that the court will have to resolve issues which arise under both Title 11 and federal statutes that regulate activities affecting interstate commerce, such as the Securities Act of 1933, the Securities Exchange Act of 1934, the Investment Company Act of 1940, the Commodity Exchange Act, and RICO.

The legislative history provides a little guidance for interpreting the mandatory withdrawal provision. For example, during the House debate, the following colloquy took place:

Mr. Kramer.

\*     \*     \*     \*     \*     \*

My question is this: The language "activities affecting interstate commerce" is very broad language. What kinds of situations or circumstances does the gentleman intend to cover here? Or will this language become an escape hatch through which most bankruptcy matters will be removed to a district court?

Mr. Kastenmeier. I thank the gentleman for his question.

This language is to be construed narrowly. It would, for example, mean related causes which may require consideration of both title 11 issues and other Federal laws including cases involving the National Labor Relations Act, civil rights laws, Securities and Exchange Act of 1934, and similar laws.

Now, for example, some question arises: Would this affect existing cases involving asbestosis victims against manufacturers? The answer is no. Those are essentially State issues. They are related to the core bankruptcy and will be determined by the bankruptcy judge; they will not be recalled on that basis.

130 Cong.Rec. H1849–50 (daily ed. March 21, 1984). During the Senate debate, the following analysis of section 157(d) was given:

The district court should withdraw such proceedings only if the court determines that the assertion that other laws regulating organizations or activities affecting interstate commerce are in fact likely to be considered, and should not allow a party to use this provision to require withdrawal where such laws are not material to resolution of the proceeding. The district court should refuse withdrawal if withdrawal would unduly delay administration of the case, considering the status of the case, the importance of the proceeding to the case, and the relative caseloads of the district court and bankruptcy judge.

130 Cong.Rec. S6081 (daily ed. June 19, 1984) (statement of Sen. DeConcini).

One case has interpreted section 157(d) and the legislative history in the following manner:

Section 157(d) must ... be read to require withdrawal not simply whenever non-Code federal statutes will be *considered* but rather only when such consideration is necessary for the *resolution* of a case or proceeding. The preceding analysis of legislative history and the Code's structure demonstrates the importance of the observations during the House debate that § 157(d) was not intended to become "an escape hatch through which most bankruptcy matters will be removed to the district court" ..., and in the Senate debate that district courts "should not allow a party to use this provision to require withdrawal where such laws are not material to the resolution of the proceeding." ... Consequently, in light of the congressional goal of having expert bankruptcy judges determine complex Code matters to the greatest extent possible, [the] motion to withdraw reference should be granted only if the current proceedings before the Bankruptcy Court cannot be resolved without substantial and material consideration of ... provisions [of federal statutes].

*In re White Motor Corp.*, 42 B.R. 693, 703–04 (N.D.Ohio 1984) (citations omitted).

■ As the pleadings in the adversary proceedings now stand, no federal law is

involved. Resolution of the present issues will not require the court to consider any federal laws. Therefore, mandatory withdrawal is not dictated. If the pleadings are ultimately upheld or amended to include federal issues, that will be the time to determine whether the resolution of the adversary proceedings requires consideration of federal laws.[19] Now is not the time to guess.

## V. CONCLUSION

For the reasons stated above, the motions to withdraw the references of the adversary proceedings are denied in all respects.

SO ORDERED.

See also, 2d Cir., 666 F.2d 754.

---

**19.** The plaintiff argues that mandatory withdrawal based upon "trumped-up" federal counterclaims and defenses is improper. The plaintiff makes an analogy to the law of removal and argues that a defendant should not be able to set forth "trumped-up" federal counterclaims and defenses in an attempt to withdraw the proceeding. Section 1441 permits removal of an action which could have been brought originally under federal question jurisdiction. 28 U.S.C. § 1441(b) (1982).

It is a hornbook principle of federal jurisdiction that "for both removal and original jurisdiction, the federal question must be presented by plaintiff's complaint as it stands at the time the petition for removal is filed.... It is insufficient that a federal question has been raised as a matter of defense or as a counterclaim.

*Little Ferry Associates v. Diaz,* 484 F.Supp. 890, 891 (S.D.N.Y.1980) (footnote omitted).

While we do not embrace the plaintiff's position now, it is interesting particularly in light of the questionable timing of the commencement of the adversary proceedings and the District Court actions. *See supra* note 11.