In re PRICE–WATSON CO., an Illinois Corporation, Debtor.

PRICE–WATSON CO., an Illinois Corporation, Plaintiff,

v.

AMEX STEEL CORPORATION, et al., Defendants.

In re HUTSON MANAGEMENT SERV., INC., Debtor.

HUTSON MANAGEMENT SERV., INC., Plaintiff,

v.

ESKEY, INC., Defendant.

Misc. Nos. C–86–10, C–86–14. Bankruptcy Nos. 82–B–2202, 85–01034–C2–5. Adv. Nos. 84–0054–C, 85–0059–C2.

United States Bankruptcy Court, S.D. Texas, Corpus Christi Division.

Oct. 28, 1986.

Ken E. Mackey, Austin, Tex., for Hutson Management Serv., Inc.

Kenneth S. Marks, Houston, Tex., for Eskey, Inc.

Robert J. Anderson, Corpus Christi, Tex., for First State Bank of Corpus Christi.

Matthew Rosenstein, Corpus Christi, Tex.; for N. Bank of Corpus Christi.

Malcolm M. Gaynor, Chicago, Ill., for Price-Watson Co.

Eugene E. Gozdecki and Paul L. Zido, Chicago, Ill., F. Edward Barker, Corpus Christi, Tex., for Amex Steel Corp.

Louis W. Levit, Chicago, Ill., Ernest L. Duncan, Jr., Corpus Christi, Tex., for Ed Hagen.

Melanie Rovner, Chicago, Ill., for Corpus Christi National Bank.

Cherie Erickson and William Reifman, Chicago, Ill., for Continental Illinois National Bank and Trust Co. of Chicago.

Cherry D. Williams, Corpus Christi, Tex., for Richard Perez.

R.F. WHELESS, Jr., Chief Judge.

On September 18, 1986 in each of the above mentioned cases, The Honorable Hayden W. Head, Jr., United States District Judge for the Southern District of Texas, Corpus Christi Division entered an order requesting the undersigned to make a recommendation with respect to the motions filed in the above styled cases to withdraw the reference. In each case, the defendant filed a motion to withdraw the reference. The essence of each of the motions is that the cases involved "related to" matters and not "core" matters, that the defendants had timely requested a jury, that the 7th Amendment guarantees them a right to trial by jury, and that the Bankruptcy Judges are not authorized to preside over a jury trial.

Section 157(d) of Title 28 provides (in part) as follows:

"The District Court may withdraw, in whole or in part, any case or proceeding refered under this section, on its own motion or on timely motion of any party, for cause shown."

Under Miscellaneous Rule 14 of the Local Rules of the United States Bankruptcy Court for the Southern District of Texas, the *timeliness* of a motion to withdraw "shall be determined by the District Court. However, in no instance shall a motion be considered timely if made after the Bankruptcy Court has begun taking testimony in the case or proceeding which is the subject of the motion."

In these cases evidence has not commenced. The definition of "timeliness" is not defined in the statute and was deliberately left without definition in the Local Rules in order that timeliness be determined on a case by case basis.

As far as the undersigned is concerned the motions to withdraw were timely filed.

■ The statute itself is silent regarding what constitutes "cause" sufficient to warrant discretion and withdrawal of the reference. There is little case law dealing with the discretionary withdrawal provisions of Section 157(d). The legislative history doesn't shead much light on the subject. In bankruptcy proceedings regarding the withdrawal of reference, "cause shown" is a "term yet to be explored in the context of specific cases." *Pacemaker Diagnostic Clinic of America, Inc. v. Instromedix, Inc.* 725 F.2d 537–545 (9th Cir.1984), cert. denied, 469 U.S. 824, 105 S.Ct. 100, 83 L.Ed.2d 45. The use of the term "cause shown" in Section 157(d) creates a presumption that Congress intended to have bankruptcy proceedings adjudicated in the Bankruptcy Court unless rebutted by a contravening policy. *In re DeLorean Motor Co.*, 49 B.R. 900 (Bankr.E.D.Mich.1985).

■ The presumption may be overcome only by an overriding interest based on a finding by the Court that the withdrawal of a reference is essential to preserve a higher interest than that recognized by Congress and is narrowly tailored to support that purpose. *See DeLorean*, 49 B.R. at 912, citing *Press-Enterprises Co. v. Superior Court of California Riverside County,* 464 U.S. 501, 104 S.Ct. 819, 78 L.Ed.2d 629 (1984) (the existence of state law issues or trustee's demand for jury trial is not sufficient cause); *In re Wisconsin Steel Co.*, 48 B.R. 753 (D.N.D.Ill.1985) (plain language of provision permits withdrawal of core proceedings); *In re Lion Capital Group*, 48 B.R. 329 (S.D.N.Y.1985).

■ This Court is in accord with the respective defendants contentions that the involved cases are "related to" proceedings (as opposed to "core" proceedings) within the meaning of Section 157 of Title 28 United States Code, that they have timely requested a jury trial and that they are entitled to the same under the provisions of the 7th Amendment to the United States Constitution, as the issues in these two cases are issues at common law where the value in controversy exceeds $20.

Thus the determinative issue with respect to these two motions to withdraw the reference is whether or not a Bankruptcy Judge can preside over a jury trial. If a Bankruptcy Judge cannot preside over a jury trial, then the effect of failure to withdraw the reference would be to deprive the litigants of a jury trial to which they would otherwise be entitled to under the Constitution. If a Bankruptcy Judge cannot preside over a jury trial, then, in my opinion, cause would be shown to withdraw the reference as the Congressional presumption that it is intended that bankruptcy proceedings be adjudicated in a Bankruptcy Court would be overcome or rebutted by the superior or contravening policy in favor of jury trials as preserved by the 7th Amendment to the United States Constitution.

The 7th Amendment to the United States Constitution provides as follows:

"In suits at common law, where the value in controversy shall exceed $20.00; the right of trial by jury shall be pre-

served; and no fact tried by a jury shall be otherwise reexamined in any Court of the United States, than according to the rules of common law."

At the outset let me point out that the issue of whether the Bankruptcy Judges can preside over jury trials is not a settled issue and there now exists substantial controversy and a conflict of authorities with respect thereto.

To help simplify an otherwise multifaceted issue it might be said that there are five important factors which bear on the involved controversy. The first of these is the U.S. Constitution and the Supreme Court's construction thereof in its opinion in *Northern Pipeline Construction Co. v. Marathon Pipeline Co., et al.*, 458 U.S. 50, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982), in which the Supreme Court struck down the existing bankruptcy jurisdictional provisions; as then provided for under 28 U.S.C. § 1471. That section provided in subpart (b) that the District Courts shall have original but not exclusive jurisdiction of all civil proceedings arising under Title 11 or arising in or related to cases under Title 11. However, (pre-*Marathon*) Section 1471(*c*) provided as follows:

> "The Bankruptcy Court for the district in which a case under Title 11 is commenced shall exercise all of the jurisdiction conferred by this section on the District Courts."

The Supreme Court determined in *Marathon* that this jurisdictional grant was too broad and was unconstitutional. I shall discuss this more fully below.

The second important factor in this controversial game is the promulgation of the Bankruptcy Rules by the United States Supreme Court in August 1983, over one full year after the *Marathon* decision. Bankruptcy Rule 9015 provides for jury trials on issues tryable of right by jury. These Rules were promulgated by the U.S. Supreme Court and were allowed to become effective by the U.S. Congress. A copy of Rule 9015 is attached.

Thirdly, in June 1984 the United States Congress promulgated the 1984 Amendments to the Bankruptcy Act. This was signed into law on July 10, 1984 by the President.

A fourth factor might be said to be the order of reference of bankruptcy proceedings by the District Judges entered August 9, 1984 and the general order of the District Judges regarding the conduct of jury trials by the Bankruptcy Judges, which order was signed March 6, 1986. These latter two orders are attached to this opinion and recommendation.

A fifth factor might be the *proposed* Bankruptcy Rules which shall be discussed more fully below.

Because of the opinion that Bankruptcy Judges are authorized to try jury cases and because of certain practical considerations, the undersigned recommends that the request for jury trials of these defendants should be granted, but that the reference should not be withdrawn. This will be explained more more fully below; however, a discussion of the United States Constitution, the *Marathon* decision, the Bankruptcy Rules and the 1984 Amendments is necessary to an understanding of the involved rationale.

Basic to my reasoning is that the involved provisions of Article III of the Constitution should be read in light of their purposes and not necessarily taken literally, and that the 1984 Bankruptcy Amendments properly provide for a jurisdictional scheme that addresses the concerns of the Constitution and the Supreme Court as expressed in *Marathon*.

### The 1984 Bankruptcy Amendments

The 1984 Bankuptcy Amendments provide in § 1334 of Title 28 that the District Courts shall have original but not exclusive jurisdiction of all civil proceedings arising under Title 11 or arising in or related to cases under Title 11. This section additionally provides for abstention in certain instances (mandatory and discretional) but these provisions are not essential to the decision here.

Section 151 of Title 28 provides that the Bankruptcy Judges in regular active service shall constitute a unit of the District

Court to be known as the Bankruptcy Court for that district. Each Bankruptcy Judge, *as a judicial officer of the District Court, may* exercise the authority conferred under this Chapter with respect to any action, suit, or proceeding and may preside alone and hold a regular or special session of the court, except as otherwise provided by law or by rule or order of the District Court. Section 157 of Title 28 provides as follows:

"(a) Each District Court may provide that any or all cases under Title 11 and any or all proceedings arising under Title 11 or arising in or related to a case under Title 11 shall be referred to the Bankruptcy Judges for the District."

Subsection (b) provides that Bankruptcy Judges may hear *and determine* all cases under Title 11 and all core proceedings arising under Title 11 or arising in a case under Title 11, (assuming these are referred by the District Judges under Subsection (a) of this section) and may enter appropriate orders and judgments, subject to review under Section 158 of this Title. The review referred to above is appellate review by the District Court under the "clearly erroneous" standard.

Section 157(b)(2) defines core proceeding. The definition is extensive and non-exclusive. It will not be set out herein but is referred to for its terms.

The section that is critical to this review is Section 157(c)(1) of Title 28 United States Code which provides:

"A Bankruptcy Judge may hear a proceeding that is not a core proceeding but that is otherwise *related to* a case under Title 11. In such proceeding, the Bankruptcy Judge shall submit proposed findings of fact and conclusions of law to the District Court, and any final judgment shall be entered by the District Judge after considering the Bankruptcy Judge's proposed findings and conclusions and after reviewing de novo those matters to which any party have timely and specifically objected." (emphasis added)

Such proceedings shall hereinafter be referred to as "related to" matters. The subsection then talks about "consent" jurisdiction. I believe that most authorities agree that Bankruptcy Judges may hear jury cases in the event there is consent by both parties to this procedure. However, in the cases before the Court no such consent has been given.

If the involved cases were not related to a case under Title 11 then neither the Bankruptcy Court nor the District Court would have jurisdiction under these provisions. However, no complaint is raised that these are not (at least) "related to" matters in each of the two cases. As a result, I see no need in discussing the elements of a "related to" matter as opposed to a proceeding which is not related to a case under Title 11. As noted above I have already determined that this is not a "core" matter.

In addition to the above staturoty provisions I would point out that Section 152 of Title 28 United States Code provides for the appointment of Bankruptcy Judges by the United States Court of Appeals for the Circuit. The appointment is for 14 years. In my opinion this is an important provision from the standpoint of meeting the *purposes* behind the involved constitutional provision.

As you know Section 1 of Article III of the United States Constitution provides:

"The judicial power of the United States shall be vested in one Supreme Court, and in such inferior courts as the Congress may from time to time ordain and establish. The Judges, both of the Supreme and inferior courts, shall hold their offices during good behavior, and shall, at stated time, receive for their services a compensation which shall not be diminished during their continuance in office."

The language of the Constitution on this subject is clear, and unequivical. How then can Bankruptcy Judges act as judicial officers when they do not meet the literal test of Section 1 of Article III? It is clear that Bankruptcy Judges are judicial officers, 28 U.S.C. § 151. They are appointed by the United States Courts of Appeal for

the Circuit, 28 U.S.C. § 152. The Article III Judges *may* provide that any or all cases under Title 11 and any or all proceedings arising under Title 11 or arising in or related to a case under Title 11 *shall* be referred to the Bankruptcy Judges for the District, 28 U.S.C. § 157(a).

*Moreover*, it is clear that, if referred, Bankruptcy Judges may hear *and determine* all cases under Title 11 and all core proceedings arising under Title 11 or arising in a case under Title 11.

As noted, the definition of core proceedings is a broad one and is nonexclusive. Included within the definition of core proceedings is a counterclaim by the estate against persons filing claims against the estate. In many instances matters involving the rights of parties under state law come before the Bankruptcy Court as a core matter. I will make no attempt to give illustrations, but this happens virtually on a daily basis, and the outcome of the trial of such issues often establishes the legal rights of the parties in and to property, both real and personal. More often than not these rights are based on *State* law. Often the question of whether a matter is a core matter or is a related to matter is determined by the form in which the issue was raised (i.e. a counterclaim or motion to lift stay or a motion to sell property—are examples) rather than by the substantive issues themselves.

■ A Bankruptcy Judge may hear a proceeding that is not a core proceeding if it is otherwise related to a case under Title 11, 28 U.S.C. § 157(c)(1). In such instances the Bankruptcy Judge acts somewhat as a fact finder and submits proposed findings of fact and conclusions of law to the District Court and a proposed final order or judgment, which "shall be entered by the District Judge after considering the proposed findings and conclusions and after reviewing de novo those matters which any party has timely and specifically objected."

However, I think it is clear that the Article III court must be an "informed" Article III court when making the decision to approve or modify the proposed findings and conclusions and whether to enter the proposed judgment. *Marathon* page 81, 102 S.Ct. at 2876. It is further clear that the District Court can, but does not necessarily have to, retry all or any part of the related to case.

The term "de novo review" from 28 U.S.C. § 157(c)(1) is akin to "de novo determination" from the Magistrates Act 28 U.S.C. § 636(b). It does not mean "de novo *trial*". *Moody v. Amoco Oil Co.*, 734 F.2d 1200, 1210 (7th Cir.) cert. denied, 469 U.S. 982, 105 S.Ct. 386, 83 L.Ed.2d 321 (1984); *In re Lion Capital Group*, 49 B.R. 329 (D.C.S.D.N.Y., 1985); *Campbell v. United States District Court*, 501 F.2d 196 at 206 (9th Cir., 1974); *United States v. Veteto*, 701 F.2d 136 (11th Cir.1983) cert. denied 103 S.Ct. 3548; *United States v. Raddatz*, 447 U.S. 667, 100 S.Ct. 2406, 65 L.Ed.2d 424 (1980). These cases will be discussed more fully below.

In considering the meaning and effect of the 1984 Amendments, one should consider the setting within which the Amendments took place. In 1978 the Congress had attempted to vest in the Bankruptcy Courts and Judges jurisdiction to try *all* matters arising in, arising under or related to a matter pending under Title 11 of the United States Code (The Bankruptcy Code). When this broad jurisdictional grant was declared to be unconstitutional, the Congress reacted to provide a solution consistent with the Supreme Court's opinion in *Marathon* which are now known as the 1984 Bankruptcy Amendments. Considering Congress's effort to give broad jurisdictional grant to the Bankruptcy Court in the 1978 Code, it is this Court's belief that the United States Congress intended for the 1984 Amendments to extend bankruptcy jurisdiction to Bankruptcy Judges to the fullest extent permissible by the U.S. Constitution; provided the same was authorized by the District Courts of the involved district. I would further submit that this was the intention of the District Court in entering the Order of Reference on August 9, 1984 (a copy of which is attached hereto).

# 150

*The Constitutionality Of The
1984 Amendments*

█ Obviously if the involved constitutional provision was construed literally, and since Bankruptcy Judges are now defined to be judicial officers, it is clear that their judicial actions in connection with core proceedings (wherein they hear and determine the same and enter orders and judgments) would violate these constitutional provisions. Whether the Supreme Court will eventually hold that the statutory jurisdictional scheme provided for in the 1984 Bankruptcy Amendments is constitutional or not will be seen in the future. But the undersigned would submit that there is substantial basis in the *Marathon* opinion for upholding the current jurisdictional scheme.

In *Marathon* the Supreme Court noted that the involved constitutional provision should be interpreted in light of the historical context in which the constitution was written, 458 U.S. 64, 102 S.Ct. at 2867 (i.e., in light of its intent and not literally). The Court pointed out that it had upheld the creation by Congress of non-Article III courts in certain areas:

(a) territorial courts, 458 U.S. page 64, 102 S.Ct. at 2867.

(b) courts martial, 458 U.S. page 66, 102 S.Ct. at 2868.

(c) legislative courts & administrative agencies created to adjudicate cases involving "public rights", 458 U.S. page 67; *Murray's Lessee v. Hoboken Land & Improvement Co.*, 18 How. 272, 15 L.Ed. 372 (1856).

The Court in *Murray's Lessee* indicated that there were certain matters "involving public rights" which may be presented in such form that the judicial power is capable of acting on them, and which are susceptible of judicial determination, but which Congress may or may not bring within the cognizence of the Courts of the United States, as it may deem proper. On 458 U.S. page 67, 102 S.Ct. at 2867 the *Marathon* Court said: "This doctrine may be explained in part by reference to the traditional principal of sovereign immunity, which recognizes that the government may attach conditions to its consent to be sued." "But the public rights doctrine also draws upon the principle of separation of powers, and a historical understanding that certain prerogatives were reserved to the political Branches of Government. The doctrine extends only to matters arising 'between the government and persons subject to its authority in connection with the performance of the constitutional functions of the Executive or Legislative Departments'. *Crowell v. Benson*, 285 U.S. page 22, 50, 52 S.Ct. 285, 292, 76 L.Ed. 598 (1932), and only to matters that historically could have been determined exclusively by those departments." At a minimum the so called "public rights" must be between the government and others.

In *Marathon* the Supreme Court recognized that Bankruptcy Courts, as they functioned under the then existing jurisdictional provision, were different from and exercised greater jurisdiction than, territorial courts, courts martial, or courts involving public rights. However, the Court went further and stated on 458 U.S. page 80, 102 S.Ct. at 2876:

"First, it is clear that when Congress creates a substantive federal right, it possesses substantial discretion to prescribe the manner in which that right may be adjudicated—including the assignment to an adjunct of some functions historically performed by judges. Thus *Crowell* recognized that Article III does not require 'all determinations of fact (to) be made by judges,' 285 U.S., at 51, 52 S.Ct. at 292; with respect to Congressionally created rights, some factual determinations may be made by a specialized fact finding tribunial designed by Congress, without constitutional bar, id. (at 54, 52 S.Ct. at 293). Second, the functions of the adjunct must be limited in such a way that the 'essential attributes' of judicial power are retained by the Article III Court."

The essential element described by the *Marathon* court is that the authority and responsibility to make an informed, final

determination remains with the Article III Judge (i.e. by de novo review and not by appeal).

However, as stated on page 83, 102 S.Ct. at 2877:

"But when Congress creates a statutory right, it clearly has the discretion, in defining that right, to create presumptions, or assign burdens of proof, or prescribe remedies; it may also provide that persons seeking to vindicate that right must do so before a particularized tribunials created to perform the specialized adjudicative tasks related to that right. Such provisions do, in a sense, effect the exercise of judicial power, but they are also incidental to Congress' power to define the right that it has created."

It appears to the undersigned that the foregoing language from page 83 is the basis for the jurisdiction of Bankruptcy Judges over "core" matters as provided for by the U.S. Congress to be vested in Bankruptcy Judges under the authority of District Courts. I submit that such grant of jurisdiction is constitutional as defined by the U.S. Supreme Court in *Marathon.*

On the other hand, the Supreme Court went on further to say that no comparable justification exists when the right being adjudicated is not of Congressional creation, i.e. when the issues are of state or common law and do not arise in or arise under Title 1.1 (a core matter) but are simply related to and where no consent to Bankruptcy Court jurisdiction has been given. This determination and the discussion regarding fact finding by non-Article III Courts on page 80 (quoted above) seem to be the basis for the statutory procedure under which Bankruptcy Judges hear "related to" matters but do not determine them. 28 U.S.C. § 157(c)(1).

It is important to note that the Supreme Court in *Marathon* pointed out that the purpose behind the Constitutional provision was to ensure the independence of the judiciary from the control of the Executive and the Legislative Branches of government. If either the Legislative Branch or the Executive Branch could control the salary of

the Federal Judiciary or provide for periodic appointments those circumstances would be fatal to the Federal Courts' necessary independence. In addition, the constitutional provision insulated the Federal Judiciary from popular opinion. The purpose of the provision, therefore, was that of separation of powers and of the independence of the Federal Judiciary.

Under the present statutory scheme, Bankruptcy Judges are appointed for a 14 year term by the Judges of the Court of Appeals for the involved Circuit. This insulates Bankruptcy Judges from both the Legislative and Executive Branches of government. While the Congress can reduce the salaries of Bankruptcy Judges during their term of office, nevertheless if this were done as a means of influencing Bankruptcy Judges, no doubt this would constitute cause for the withdrawal of the reference by the District Judges. Thus, a check and balance exists which is in harmony with the *purpose* of the involved constitutional provision.

Moreover, the Supreme Court in *Marathon* has approved the use of adjunct fact finders even in the adjudication of constitutional rights, so long as those adjuncts were subject to sufficient control by an Article III District Court, 458 U.S. 78 and 79, 102 S.Ct. at 2875 and citing *United States v. Raddatz,* 447 U.S. 667, 100 S.Ct. 2406, 65 L.Ed.2d 424 (1980).

The standard of review in core matters on appeal is "clearly errorneous" standard. However, in related to matters, as noted above, the review is a "de novo" review. This requires the Article III Court to make an independent judgment on the issues, although it is not necessary to retry the case. *Moody v. Amoco Oil Company, supra.,* a case based on the interim rule; *In re Lion Capital Group, supra.; United States v. Veteto, supra; Campbell v. United States District Court, supra; United States v. Raddatz, supra.* The latter three cases are based on the Magistrates Act.

Thus both the U.S. Supreme Court (in *Marathon* ) and the U.S. Congress (in 28

U.S.C. § 157(c)(1)) have authorized non-article III Judges to *hear* non-core matters (a fact finding mission) and to make recommendations to the Article III (District) Court which then becomes informed through the use of the record or otherwise (but does not necessarily have to retry the case, in whole or in part) and makes the decision as and when the District Judge is satisfied that he (or she) is sufficiently "informed" to act on the issue. The District Court could retry the case, even with a jury, but why would it? The jury would (presumably) have determined the critical fact issues in the same way this could have been done in a trial before the Bankruptcy Court in a bench trial.

### Jury Trials

■ Having discussed the jurisdictional setting relating trials of "related to" matters in the Bankruptcy Court I now wish to address briefly the other four factors which I mentioned above.

The *Marathon* decision was made in June, 1982. However, the *Marathon* Court delayed the effectiveness of its ruling until October 1982 and then extended this period to December 1982; all in expectancy that the U.S. Congress would quickly cure the jurisdictional problem created by voiding the existing jurisdictional statute, i.e. 28 U.S.C. § 1471(c). That "cure" did not occur until the summer of 1984. However, notwithstanding the holding in *Marathon* and the subsequent delay by the U.S. Congress in taking action concerning Bankruptcy Court jurisdiction; nevertheless the Supreme Court of the United States subsequently promulgated the Bankruptcy Rules, including Rule 9015. Therefore, with full knowledge of its *Marathon* holding, the Supreme Court provided by Rule that the Bankruptcy Court could try issues tryable of right by jury. Upon such promulgation of the Bankruptcy Rule, including Rule 9015, the U.S. Congress approved the Bankruptcy Rules by failing to abrogate them after they had been transmitted to the U.S. Congress under the provisions of § 2075 of Title 28 United States Code.

The Bankruptcy Rules, including Rule 9015 became effective August 1, 1983.

In June 1984 the U.S. Congress passed the 1984 Bankruptcy Amendments. These were signed by the President and became effective July 10, 1984. As part of these Amendments the Congress promulgated § 1411 of Title 28 as follows:

"(a) Except as provided in subsection (b) of this section, this chapter and Title 11 do not affect any right to trial by jury that an individual has under applicable nonbankruptcy law with regard to a personal injury or wrongful death tort claim.

(b) The District Court may order the issues arising under § 303 of Title 11 to be tried without a jury."

Thusly the stage was set for the current controversy. The reported case authority on the issue of the right of Bankruptcy Judges to hear jury trials are varied as to their respective holdings and the rationale behind the decision.

Some Courts have held that there is no right to try a jury case in the Bankruptcy Court in a "related to" matter on the ground that the "de novo review" provision required by 28 U.S.C. § 157(c)(1) would mandate a second jury trial in the District Court if either party objected. *Mohawk Industries, Inc. v. Robinson Industries, Inc.*, 12 B.D.C. 891 (D.Mass., 1984); see also *In re American Energy*, 50 B.R. 175 (D.N.D., 1985). In the case of *In re Mauldin*, 52 B.R. 838 (Bankr.N.D.Miss., 1985) Bankruptcy Judge Houston concluded that the Bankruptcy Court could hear a jury trial in a *core* matter, but not in a related to matter as the Bankruptcy Court lacks authority to enter a binding judgment, and therefore the jury determination would be only advisory in nature.

Some Courts have held that the Bankruptcy Court can hear a jury trial, but that such conduct is impractical or inefficient because the Bankruptcy Court cannot enter a final judgment. *In re Morse Electric Company, Inc.*, 47 B.R. 234 (Bankr.N.D. Ind.1985); *In re Smith-Douglass, Inc.*, 43 B.R. 616 (E.D.N.C., 1984). In the case of

*Macon Pre-stress Concrete Company v. Duke*, 46 B.R. 727 (M.D.Ga., 1985) the District Court pointed out that there appeared to be no express statutory authorization for a Bankruptcy Court to conduct a jury trial, but that neither was there a direct prohibition. The Court concluded that in "related to" matters a jury verdict would be advisory only and subject to de novo review and that therefore a District Court should withdraw any non-core proceeding to which a right to a jury trial applies. On the other hand the Court concluded that because the issues in that case were raised by counterclaims by the estate against persons filing claims against the estate that such matters constituted core proceedings as defined by 28 U.S.C. § 157(b)(2) and that since a Bankruptcy Judge would be authorized to enter a binding judgment upon a jury's verdict withdrawal of the reference was not required on the account of the prospect of a jury trial in the Bankruptcy Court.

In the case of *Bokum Resources Corporation v. Long Island Lighting*, 13 B.C.D. 11 (Bankr.N.Mex., 1985), the Bankruptcy Judge concluded that there was no right to a jury trial in the Bankruptcy Court. In *In re Proehl*, 36 B.R. 86 (W.D.Vir.1984) in a decision made prior to the 1984 Amendments, but after Bankruptcy Rule 9015 was promulgated by the U.S. Supreme Court, the District Court concluded that the Supreme Court's decision in *Marathon* impliedly held that it would be unconstitutional to delegate this authority to a Bankruptcy Court. This Judge further seems to feel that a *party* has no right to a jury trial in bankruptcy matters (Page 87, FN 40, 102 S.Ct. at 2880).

The Judge does not explain why the Supreme Court promulgated Bankruptcy Rule 9015 if it felt there was no constitutional authority for the Bankruptcy Court to conduct such jury trials. Note that in the case of *Saloman v. Keiser*, 722 F.2d 1574, page 1579 (CA2, 1983) the Second Circuit concluded that since the Bankruptcy Rules were promulgated with full awareness of *Northern Pipeline*, "these Bankruptcy Rules can presume to be constitutional."

In the case of *Holland Insurance Co. v. Shepard J. Roy*, 777 F.2d 992, 999, the Fifth Circuit stated that there is some doubt whether Bankruptcy Judges can conduct jury trials in light of *Marathon* and the Bankruptcy Amendments. However, the issue was not then before the Court and the question was expressly not decided.

Other Courts have upheld the right of the Bankruptcy Court to conduct a jury trial in "related to" matters.

In the matter of *George Woloch Co., Inc.*, 49 B.R. 68 (E.D.Penn.1985) the District Court concluded that the Bankruptcy Court can hear jury trials by virtue of Bankruptcy Rule 9015; *In re OPM Leasing Services*, 48 B.R. 824 (S.D.N.Y.1985) the District Court concluded that there was no question but that the Bankruptcy Rules provided for the trial of jury cases by the Bankruptcy Courts; *In re Lombard-Wahl, Inc. v. New York City Housing Development Corp.*, 48 B.R. 986 (S.D.N.Y.1985) the District Court concluded that the Bankruptcy Court can conduct jury trials. To like effect *In re Gibbens Construction, Inc.* 46 B.R. 193 (E.D.Ky.1984).

Prior to the 1984 Bankruptcy Amendments, 28 U.S.C. § 1480 provided as follows:

(a) Except as provided in subsection (b) of this section, this chapter and title 11 do not affect any right to trial by jury, in a case under title 11 or in a proceeding arising under title 11 or arising in or related to a case under title 11, that is provided by any statute in effect on September 30, 1979.

(b) The Bankruptcy Court may order the issues arising under § 303 of title 11 to be tried without a jury.

There is some uncertainty over the fate of § 1480 since the 1984 Amendments failed to specifically repeal § 1480 and there is no general repealer. See *Baldwin-United Corporation v. Thompson*, 48 B.R. 49 (Bankr.S.D.Ohio, 1985).

In the case of *In re Rodgers and Sons, Inc.*, 48 B.R. 683 (Bankr.E.D.Okla.1985) Judge Mickey D. Wilson, sitting by designation held that a Bankruptcy Court does have jurisdiction to hear jury trials. On page 686 the Judge concluded "there is no prohibition under the Amendments against jury trials being conducted by the Bankruptcy Court. The Amendments are silent on the right of the debtor, trustee or creditors to try jury trials in cases and proceedings."

With respect to 28 U.S.C. § 1480, the pre 1984 Amendment statutory provision relating to trial of jury cases in Bankruptcy Courts, the Court noted as follows:

"Conspicuous by its absence in § 1411 is the broad language of § 1480 at subsection (a) which provides that the right to trial by jury in a case or a proceeding under Title 11, is retained as it existed under any statute in effect on September 30, 1979. There is some uncertainty over the fate of § 1480 since the Amendments failed to specifically repeal § 1480 and there is no general repealer. See *Baldwin-United Corporation v. Thompson*, 48 B.R. 49, 12 B.C.D. 913 at 914 (Bankr. S.D.Ohio 1985), where the Court found: 'while it is subject to debate whether 28 U.S.C. § 1480 of the 1978 Code remains in effect, it is beyond question that Bankruptcy Rule 9015 was left untouched by Congress and is still viable.' "

Judge Wilson further went on to note that in an interview published in the 1984/1985 Winter American Bankruptcy Institute News Letter, Senators Dole and Deconcini commented on the Congressional intent in enacting § 1411. Senator Deconcini said:

"I believe there was no intent on the part of Congress to alter or modify the rights to jury trials that might have existed under the reform act ... there was no desire on the part of any conferees to limit the right of jury trial in other areas."

Senator Deconcini conceded that the conferees inadvertantly failed to pick up the broader language of the former provision. Senator Deconcini further explained that § 1411 was drafted in response to a question of whether the right to jury trial would be protected in personal injury and wrongful death cases when tried in District Courts. The Congressional Record confirms that the intent was to *supplement* the language of § 1480 rather than limit the right to jury trial. See Senator Thurman's comments on June 29, 1984 at page S8888 where he explains § 1411: "New language on the issue of jury trials is included."

While Senator Dole and Deconcini's comments in the aforementioned interview are not legislative history, nevertheless the comments do appear to explain what happened to 28 U.S.C. § 1480 in the 1984 Bankruptcy Amendments. It should be kept in mind that the 1984 Amendments were passed by both the House and the Senate (both on the same day) immediately after the Senate and House conferences had meet during two night sessions immediately preceeding this vote. This is the reason that there is no true legislative history concerning these amendments.

In the case of *In re Gaildeen Industries, Inc.*, 59 B.R. 402 (N.D.Cal., 1986) District Judge Patel held that the Bankruptcy Court does have authority to conduct a jury trial in a core matter (a preference action). On page 405 Judge Patel noted that there is some confusion resulting from the 1984 Amendments which included 28 U.S.C. § 1411(a) concerning the right of jury trial in a personal injury or wrongful death tort claim, but which eliminated 28 U.S.C. § 1480 which had provided for jury trials to be held in the Bankruptcy Court. Judge Patel noted that "Courts have generally concluded that § 1411 was not intended to limit the power of Bankruptcy Judges to conduct jury trials in actions other than those for personal injury or wrongful death" (cases cited).

Judge Patel pointed out on page 406 of the opinion that the overwhelming majority of published decisions addressing the issue have concluded that Bankruptcy Courts do

have the power to conduct jury trials (cases cited).

Further on page 406 Judge Patel stated "There is no statutory provision, applicable in this case, that either expressly authorizes or expressly prohibits jury trials in Bankruptcy Courts. Nonetheless it seems clear that Congress intended for Bankruptcy Judges to conduct jury trials in appropriate cases. 28 U.S.C. § 157(b) authorizes Bankruptcy Judges to 'hear and determine all cases under Title 11 and all core proceedings arising under Title 11, or arising in a case under Title 11, referred' by the District Court. Furthermore, § 157(b) permits the Bankruptcy Courts to enter final orders and judgments in all core proceedings. This broad grant of jurisdiction would seem to include those cases in which a right to jury trial exists.

As already discussed, the 1984 Amendments were in large part a ratification of the Emergency Rule. Had Congress intended to prohibit Bankruptcy Judges from conducting jury trials, it need only have enacted the proscription contained in the Emergency Rule. Congress did not do so. Instead it granted the Bankruptcy Courts very broad jurisdiction under § 157 while leaving intact Rule 9015 and 9027 which clearly contemplate, if not expressly authorized, jury trials in Bankruptcy Courts."

In referring to the *Marathon* decision, Judge Patel stated on page 407 "The Court did not hold that allowing Bankruptcy Courts to conduct jury trials would, in and of itself, constitute an unwarranted encroachment upon the judicial power of the United States. 458 U.S. at 804, 102 S.Ct. at 2878 ... furthermore, the Supreme Court adopted Rule 9015 more than a year after its decision in *Marathon*. Surely had the Court meant to preclude Bankruptcy Judges from conducting jury trials, it would not have adopted the Rule."

Judge Patel noted that Professor Lawrence King's comment: "Jurisdiction and procedure under the Bankruptcy Amendments of 1984, 38 Vand.L.Rev. 675, 702–708 (1985)", in which Professor King argues that § 1411 effectively repeals § 1480

and eliminated any right that might have existed to a jury trial in Bankruptcy Court. Judge Patel declined to follow Professor King's analysis.

It is my understanding that Professor King further believes that there is no right to a jury trial by the parties in related to matters, even if heard by the *District* Court. I respectfully disagree with Professor King. If implemented, Professor King's conclusion would tread heavily on the toes of the 7th Amendment. It is true that there are many matters which are equitable in nature and which have traditionally not been accorded jury trials in bankruptcy matters. See *Katchen v. Landy*, 382 U.S. 323, 86 S.Ct. 467, 15 L.Ed.2d 391 (1966), in which the Supreme Court denied the right of a jury trial in a preference action, and discussed the equitable powers of the Bankruptcy Court. This holding is not inconsistant with the language of the 7th Amendment as a preference action is not one at common law.

In a case which was decided after the Bankruptcy Rule 9015 was promulgated but prior to the 1984 Amendments and while the Emergency Rule was still in effect (which expressly prohibited jury trials in Bankruptcy Courts) Bankruptcy Judge George Paine concluded that the new Bankruptcy Rule 9015 superceded the Emergency Rule (a local rule) on this point. In the case of *In re River Transportation Company*, 9 C.B.C. 986 page 991, Judge Paine noted "Because the new Bankruptcy Rule continues to allow Bankruptcy Judges to preside over jury trials, they must override the contrary premise contained in the local rule. As Circuit Judge Aldisert explained in *Frank v. Arnold (In re Morrissey)*, 717 F.2d 100, 104, [9 C.B.C.2d 574] (3rd Cir., 1983) which concluded that the new Bankruptcy Rules clearly erroneous standard of review of bankruptcy decisions on appeal took precedence over the contrary *de novo* standard of review contained in the Emergency Local Rule:

'First, a statute vests the exclusive power for promulgating rules of Bankruptcy in the Supreme Court and the

Congress of the United States, 28 U.S.C. § 2075, and not in the United States District Courts. Bankruptcy Rule 8013 was promulgated in conformance with this statutory provision. Further, although the new rules quite properly allow each local court to adopt any local rules of practice and procedure it desires, such local rules are clearly subordinate to and may not be inconsistent with, the national rules. Bankruptcy Rule 9029. Thus, neither the Judicial Conference nor the several District Courts of the United States have the authority to propose and enact local bankruptcy rules that conflict with the new bankruptcy rules.'"

As noted above there are cases which have held that there is no right of the Bankruptcy Court to hold jury trials on the grounds that to do so would be wasteful inasmuch as the District Court would simply have to retry the issue before the jury is anyone complained of the outcome. In my opinion this reasoning is simply a misconception of the meaning and effect of the term de novo review as provided for in 28 U.S.C. § 157(c)(1).

As held in the *Moody v. Amoco Co.* case, *supra.*, decided by the 7th Circuit in 1984, in a case decided under the interim rule which also provided for de novo review, the Appellate Court held that the District Court had fulfilled its function of de novo review, although it did not conduct a new trial. It had reviewed the record and taken additional evidence. As stated on page 1210 "de novo review requires the District Court to make an independent judgment of the issues". The District Court had conducted two hearings and had invited the parties to submit affidavits, it had examined the entire record before the Bankruptcy Court. The Appellate Court also noted on page 1210 "but while a District Court may not literally rubber stamp a Bankruptcy Court opinion, it may adopt the opinion where, as here, the Court has examined the record without giving deference to the Bankruptcy Court's findings and conclusions." The Court deferred on ruling whether or not this procedure was constitutional, as no issue was raised with respect

thereto. It was merely determining the function of the term "de novo review" under the interim rule.

The *Moody* case was cited by District Judge Goettel in *In re Lion Capital Group*, 48 B.R. 329 (D.C.N.Y., 1985) in a matter involving a motion to withdraw the reference after the 1984 Bankruptcy Amendments.

As noted, the Magistrates Act calls for "de novo *determination*" by the District Court on dispositive matters and a "de novo *review*" by the District Court of related to matters in bankruptcy cases. What the difference is between a de novo determination and a de novo review is unclear to me. However, I would submit that the authorities construing de novo determination under the Magistrates Act are at least applicable to the issue of de novo review; although I feel that a de novo "determination" *might* require more on the part of a District Judge than a de novo "review". The cases have not indicated any such difference, however.

In. *United States v. Raddatz*, 447 U.S. 667, 100 S.Ct. 2406, 65 L.Ed.2d 424, the United States Supreme Court expressly held that it was not necessary for the District Court to retry the "dispositive" motion heard by the U.S. Magistrate. The U.S. Magistrate had made proposed findings of fact and conclusions and had expressly determined the credibility of the witnesses which had appeared before him. The District Court had accepted the Magistrate's proposed findings of fact and conclusions and his recommendation that the motion to suppress should be denied.

The respondent had filed objections to the Magistrate's report and had specifically cited as error the failure of the District Court to retry the issues heard before the Magistrate.

The Supreme Court stated that it considered the transcript of the hearing before the Magistrate on the motion to suppress, the parties proposed findings of fact, conclusions of law, and supporting memorandum and that it had read the recommenda-

tions of the magistrate and heard oral argument of counsel. On page 674, 100 S.Ct. at 2411 the Supreme Court stated "It should be clear that on these dispositive motions, the statute calls for a *de novo* determination and not a de novo hearing. We find nothing in the legislative history of the statute to support the contention that the Judge is required to rehear the contested testimony in order to carry the statutory command to make the required 'determination'". The Supreme Court quoted from the House Report as follows:

"The use of the words 'de novo determination' is not intended to require the Judge to actually conduct a new hearing on contested issues.... in some specific instances, however, it may be necessary for the Judge to modify or reject the findings of the Magistrate, to take additional evidence, recall witnesses, or recommit the matter to the Magistrate for further proceedings."

The Supreme Court noted that if the District Court found there to be a problem as to the credibility of a witness or witnesses or for other good reasons, *it may* in the exercise of its discretion, call and hear the testimony of a witness or witnesses in an adversary proceeding.

The Supreme Court went on to uphold the constitutionality of such a proceeding.

In *Campbell v. United States District Court for the Northern District of California, supra.* In a case decided under the provisions of the Magistrates Act and in discussing the duties of the District Court in connection with de novo determination, the 9th Circuit said on page 206 "If neither party contests the Magistrate's proposed findings of fact, the Court may assume their correctness and decide the motion on the applicable law."

The District Court, on application, shall listen to the tape recording of the evidence and proceedings before the Magistrate and consider the Magistrate's proposed findings of fact and conclusions of law. The Court shall make a *de novo* determination of the facts and the legal conclusions to be drawn therefrom.

In *United States v. Veteto, supra,* also decided that with respect to the Magistrates Act, the 11th Circuit said on page 140 "Although the Act requires the District Court to make a *de novo* determination of those parts of the Magistrate's recommendation to. which objection is made, it does not mandate a de novo hearing. *United States v. Raddatz,* 447 U.S. 667, 673–76, 100 S.Ct. 2406, 2411–12, 65 L.Ed.2d 424 (1980). If the District Court concurs with the Magistrate's recommendation, it need not hold another evidentiary hearing, even where the credibility of certain witnesses might be an important factor in making the determination."

Thus, it would seem that a District Court could similarly accept (or reject) a jury's findings of fact in the same way that the District Court can determine whether to accept or reject a Bankruptcy Judges proposed findings of fact—by a review of the record. I submit that it would be rare for a District Judge to have cause to reconsider a jury's findings and would in virtually all instances leave the determination of the credibility of the witnesses and the effect to be given to the evidence to the jury. This is nothing different than would have been done had the District Judge himself conducted the jury trial. However, it is true that the District Court could order a retrial of the issues, in whole or in part, and that if this were done the conclusion is unescapable that a new jury would have to be impaneled.

While the review by a District Judge of proposed findings of a Magistrate or of a Bankruptcy Judge appear to be the same there are otherwise significant differences in the statutory scheme provided for Bankruptcy Judges from that provided under the Magistrates Act; 28 U.S.C. § 636; which differences are worth noting in any analysis of whether Bankruptcy Judges can hear jury trials. This is especially true since as a matter of statutory authority Magistrates can only hear jury trials on consent of all parties.

The Magistrates' Act provides that a Judge may delegate a Magistrate to hear and determine pre-trial matters, except motions for injunctive relief. Bankruptcy Judges routinely hear injunctive matters under various adversary proceedings and this has been upheld in the Southern District of Texas by District Judge Carl Bue in *In re Continental Air Lines*, 61 B.R. 758 page 765.

Also under the Magistrates' Act, a Judge may designate a Magistrate to conduct evidentiary hearings and to submit proposed findings of fact and a recommendation of any motion. Further the Magistrate may be appointed as a special Master under the Federal Rules of Civil Procedure and "may be assigned such additional duties as are not inconsistent with the Constitution and the laws of the United States." The Act further provides that *upon the consent of the parties*, the Magistrate may conduct any and all proceedings in a jury or non-jury civil matter and order the entry of a judgment. 28 U.S.C. § 636.

Therefore the authority of a Magistrate to conduct a jury trial is specifically limited by statute to those situations where the parties have consented. There is no such statutory limitation with respect to Bankruptcy Judges. It would be unfortunate if one concluded that the same *Congressional* limitations on the authority of Magistrates to hear jury trials is considered to be applicable to Bankruptcy Judges. The two statutory schemes are entirely different and no comparison should be made on the basis of Congressional intent.

As should be noted by the following sections of the Bankruptcy Code, the Bankruptcy Code provides authority for Bankruptcy Judges to hear and determine matters that go substantially beyond the statutory scheme provided for U.S. Magistrates. This is true even though Bankruptcy Judges determinations are based primarily on state law and substantially effect the rights of . the involved parties, including non-debtors. The Bankruptcy Court (as Judges or Referees) have traditionally determined the rights of the parties respect-

ing all proofs of claim filed in a bankruptcy case (§ 502). They hear and determine all defenses and counterclaims to any filed proofs of claim even though the parties rights are (mostly) based on state law. They have heard and determined the propriety of the Court in abstaining from hearing a bankruptcy case (§ 305). They have heard and determined the right of creditors to involuntarily place a debtor into bankruptcy (§ 303). They appoint trustees to administer the property of the estate. They determine what property is property of the estate (§ 504) and require turnover of property of the estate (§ 542 and § 543) even from a creditor who has lawfully taken possession under state or federal law, *U.S. v. Whiting Pools, Inc.*, 462 U.S. 198, 103 S.Ct. 2309, 76 L.Ed.2d 515 (1983). They determine the propriety of allowing a debtor to borrow money and fix the terms of such borrowings (§ 304). They determine the terms of employment of professionals by the debtor (§ 327) and such professional's compensation (§ 330 and § 331). They examine transactions by the debtor with it attorney (§ 329). They determine the right of a debtor to use cash collateral of a secured lender (§ 363), order the subordination of perfected liens for certain purposes (expenditures) (§ 506(c)). They determine the tax liability of the debtor (§ 505) and the secured status of a creditor (§ 506), allow the rejection of executory contracts (§ 365), including collective bargaining agreements (§ 1113). They determine the relative priorities of obligations of the debtor under state or federal law (§ 507). They determine the exemptions of the debtor under state or federal law (§ 522). They determine the exception of certain debts to discharge (§ 523), determine whether a debtor is entitled to a general discharge of his debts (§ 727). Convert one type of case (Ch. 7, Ch. 11, Ch. 13) into another case of case (§ 506 and § 1112). Dismiss and reopen cases (§ 350 and § 707). They determine the propriety of allowing foreclosure or proceeding with other suits and actions under § 362. They determine the right of the estate to sell property, even property in which other enti-

ties own interests, and such sales can be free and clear of all such interests [§ 363(f)]. In reorganization cases, after hearing and proper determination, Bankruptcy Judges appoint trustees and examiners in appropriate cases (§ 1104), confirm plans binding on all parties in Chapter 11 (§ 1129) and Chapter 13 (§ 1325). Hear and determine the validity, extent or priority of liens under state or federal law [28 U.S.C. § 157(b)(2)(K)]. They have the authority to subordinate claims (§ 510(c)). Bankruptcy Judges hear and may enter dispositive orders setting aside preferences that have occurred both pre and post petition (§ 547) and to set aside fraudulent transfers and obligation that have been incurred (§ 548). They determine and allow setoffs (§ 553). The foregoing is not an all inclusive list.

Bankruptcy Judges are authorized by the Congress to hear and determine all cases *under* Title 11 and all core proceeding arising under Title 11 or arising in a case under Title 11 and may enter appropriate orders and judgments which are reviewed only on appeal; provided such cases are referred by the District Judges, 28 U.S.C. § 157(a) and (b).

U.S. Magistrates and U.S. Bankruptcy Judges are both Article I Judges and the same constitutional limitations apply to each. However, Congress has traditionally extended the duties and authority of the Bankruptcy Court far beyond that as provided in the Magistrates' Act. All of the foregoing is in addition to the right of Bankruptcy Judges to hear adversary cases as provided in 28 U.S.C. § 157(c) and the Bankruptcy Rules (the 7000 series). From the standpoint of the grant of Congressional authority (as opposed to the U.S. Constitution) the two acts should not be equated and the authority of a Magistrate to conduct a jury trial is not an equivalent comparison. Further, Congress could have limited the right of Bankruptcy Judges to hear jury cases in the same way it limited the authority of Magistrates. It did not do so. In addition, the Magistrates do not have the equivalent to Bankruptcy Rule 9015.

At this point I would also call to your attention General Order No. 86–1 of the Southern District of Texas issued March 6, 1986, a copy of which is attached, which provides for Bankruptcy Judges to conduct jury trials as are appropriate to be tried by a Bankruptcy Judge.

■ The *Marathon* Court has indicated that it is allowable under the Constitution that a non-article III Court act as a fact finding court. A jury merely makes determinations of fact. It would do this either in the District Court or in the Bankruptcy Court (if permissible). I see no inconsistency in a jury making fact findings which are then reported by the Bankruptcy Court to the District Court along with any supplemental findings and with conclusions of law and a recommended judgment. Under the case authorities cited above, in my opinion, it is not necessary for a District Court to retry a related to case. Thus the prospect of *two* jury trials is simply based on a misconception of the term "de novo review".

I would submit that a jury is a jury, no matter who presides over the trial. There is no such thing as an Article I jury.

I would point out, however, that under the current version of the *proposed* Bankruptcy Rules the current 9015 would be abrogated. It is my understanding that the purpose of this is *not* to negate such jury trials but to leave to court determination whether a Bankruptcy Court can preside over jury trials under law. In other words the intent, in abrogating current Rule 9015, is not to infer that such jury trial is not proper, but rather is to allow the issue to be developed in a different way, i.e. by case decision. If this is the proper interpretation, then the promulgated Rules, if they become Rules, would simply be neutral on the point.

To sum up, it seem to me that the question of Bankruptcy Judges presiding over jury trials is within the parameters of the U.S. Constitution as interpreted by the Supreme Court in *Marathon,* and it is consistent with the provisions of 28 U.S.C.

§ 157(c)(1) with respect to the trial (but not the determination) of related to matters. The Supreme Court and to some extent the Congress have apparently provided for jury trials by current Bankruptcy Rule 9015. The less clear and more confusing issue is the effect of the 1984 Amendments to the Bankruptcy Act and the intent of Congress concerning the authority of Bankruptcy Judge to try jury cases. It seems to me that this is the area of greatest controversy.

However, as I have noted above, it is my belief that the interpretation should be that Bankruptcy Judges can preside over jury trials. It may be that the matter is as simple as that the 7th Amendment provides for jury trials in matters of common law and that Congress has provided for Bankruptcy Judges to hear and determine core matters and to hear "related to matters" and has not prohibited the use of juries in that process. This in itself is a certain authority for the proposition that Bankruptcy Judges should hear jury trials. To that can be added the Bankruptcy Rule which expressly authorizes jury trials. The alternative is either that the parties are deprived of a jury trial in a trial before the Bankruptcy Court or the District Courts must hear these cases. It may be that *some* cases might be heard twice, but this is what the Congressional scheme provides for *if* that is deemed necessary by the District Judge. I do not believe that this would happen unless there was no support for the jury verdict or the Bankruptcy Judge made an error in the admission of evidence.

■ There are obvious practical considerations regarding this, if the issue of discretion is involved. If Bankruptcy Judges cannot hear jury trials, the effect may be that defendants will have a tendency to insist on jury trials as a trial strategy in delaying the effective early prosecution of the plaintiff's case. Such a mode would add considerably to the current burdens existing now on the District Courts and could possibly have a negative effect on the rights of debtors who are anxious to get their claims and disputes resolved as early and as timely as possible. This alone would be inconsistent with the very purpose Congress sought to achieve by allowing Bankruptcy Judges to hear adversary cases, i.e. a speedy resolution for cases involving debtors.

It is, therefore, my belief that from the standpoint of the Constitution, the statutory provisions promulgated by Congress, the existing Rules, the authority of the District Judges in the Southern District of Texas, and the exercise of appropriate discretion all favor the Bankruptcy Judges conducting jury trials. That such would add to the current burdens of the Bankruptcy Judges must simply be overlooked in light of the rights of the parties as guaranteed by the Constitution.

For these reasons I recommend denial of the motions to withdraw the reference.

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS

ORDER OF REFERENCE OF BANK-
RUPTCY CASES AND PROCEED-
INGS NUNC PRO TUNC

Pursuant to Section 104 of the Bankruptcy Amendments and Federal Judgeship Act of 1984, 28 U.S.C. Section 157, it is hereby

ORDERED nunc pro tunc as of June 27, 1984 that any or all cases under Title 11 and any or all proceedings arising under Title 11 or arising in or related to a case under Title 11 which were pending in the Bankruptcy Court of the Southern District of Texas on June 27, 1984, which have been filed in this district since that date and which may be filed herein hereafter (except those cases and proceedings now pending on appeal) be and they hereby are referred to the Bankruptcy Judges of this district for consideration and resolution consistent with law.

It is further ORDERED that the Bankruptcy Judges for the Southern District of Texas be, and they hereby are, directed to exercise the authority and responsibilities conferred upon them as Bankruptcy Judges by the Bankruptcy Amendments

and Federal Judgeship Act of 1984 and this court's order of reference, as to all cases and proceedings covered by this order from and after June 27, 1984.

In accordance with 28 U.S.C. Section 157(b)(5), it is further ORDERED that all personal injury tort and wrongful death claims arising in or related to a case under Title 11 pending in this court shall be tried in, or as determined by, this court and shall not be referred by this order.

So ORDERED this the 9th day of August, 1984.

/s/Hayden W. Head, Jr.
CHIEF UNITED STATES DISTRICT JUDGE

## GENERAL ORDER NO. 86-1

In Re: Jury Trials by
Bankruptcy Judges

### ORDER

The miscellaneous order of reference dated August 9, 1984, comprises the authority of bankruptcy judges (1) to determine whether a requested jury trial is a matter of right in any adversary proceeding, (2) to conduct jury trials that they determine are a matter of right and are appropriate to be tried by a bankruptcy judge, and (3) to refer to a district judge those adversary proceedings in which a jury trial has been requested that they determine are a matter of right and are appropriate to be tried by a district judge.

Signed this 6th day of March, 1986.

## RULES OF BANKRUPTCY PROCEDURE

### Rule 9015.

### JURY TRIAL

*(a) Trial by Jury.* Issues triable of right by jury shall, if timely demanded, be by jury, unless the parties or their attorneys of record, by written stipulation filed with the court or by an oral stipulation made in open court and entered in the record, consent to trial by the court sitting without a jury.

*(b) Demand.*

*(1) Time; Form.* Any party may demand a trial by jury of any issue triable by a jury by serving on the other parties a demand therefor in writing not later than 10 days after service of the last pleading directed to such issue. The demand may be indorsed on a pleading of the party. When a jury trial is demanded it shall be designated by the clerk in the docket as a jury matter.

*(2) Specification of Issues.* In his demand a party may specify the issues which he wishes so tried; otherwise he shall be deemed to have demanded trial by jury of all the issues so triable. If he has demanded trial by jury of only some of the issues, any other party within 10 days after service of the demand or such lesser time as the court may order, may serve a demand for trial by jury of any other or all of the issues.

*(3) Determination by Court.* On motion or on its own initiative the court may determine whether there is a right to trial by jury of the issues for which a jury trial is demanded or whether a demand for trial by jury in a proceeding on a contested petition shall be granted.

*(c) Waiver.* The failure of a party to serve a demand as required by this rule and to file it as required by Rule 5005 constitutes a waiver of trial by jury. A demand for trial by jury made as herein provided may not be withdrawn without the consent of the parties.

*(d) Trial by the Court.* Issues not demanded for trial by jury shall be tried by the court. Notwithstanding the failure of a party to demand a jury when such a demand might have been made of right, the court on its own initiative may order a trial by jury of any or all issues.

*(e) Advisory Jury and Trial by Consent.* In all actions not triable of right by jury the court on motion or on its own initiative may try and issue with an advisory jury or, except in actions against the United States when a statute of the United States provides for trial without a jury, the court, with the consent of both parties,

may order a trial with a jury whose verdict has the same effect as if trial by jury had been a matter of right.

*(f) Applicability of Certain of the Federal Rules of Civil Procedure.* Rules 47–51 of F.R.Civ.P. apply when a jury trial is conducted.

### Advisory Committee Note

Subdivisions (a)–(f) of this rule are adaptations of subdivisions of Rules 38 and 39 F.R.Civ.P.

Whether a party is entitled to a jury trial is governed by 28 U.S.C. § 1480(a). [Upon enactment of Pub.L. No. 98–353 (1984), this provision was superseded by 28 U.S.C. § 1411.] Subsection (b) of § 1480 empowers the court to dispense with a jury trial on issues presented by a contested involuntary petition, even when a jury trial is properly demanded. The purpose of § 1480(b) is to insure that contested petitions are decided promptly. The court may under § 1480(b) and subdivision (b)(3) act sua sponte and direct that a contested petition be tried by the court instead of to a jury.

Rule 9027(i) governs the procedure for requesting trial by jury in a matter removed to a bankruptcy court.

### Case Annotations

Bankruptcy Rule 9015, which allows a bankruptcy court to conduct jury trials, is invalid as an unconstitutional delegation of Article III power to an Article I court. *Terry v. Proehl (In re Proehl),* 11 C.B.C.2d 1084 (W.D.Va.1984).

Bankruptcy Rule 9015 grants the bankruptcy court jurisdiction to decide upon a party's right to a jury trial and, combined with the definition of "court" in Bankruptcy Rule 9001(2), overrides the prohibition found in the Emergency Rule against conducting of jury trials by bankruptcy courts. *Martin Baker Well Drilling, Inc. v. Koulovatos (In re Martin Baker Well Drilling, Inc.),* 10 C.B.C.2d 375 (B.Ct., D.Me. 1984).

Bankruptcy Rule 9015 overrules the Emergency Rule provision prohibiting bankruptcy courts from conducting jury

trials; the bankruptcy court's power to hold jury trials in bankruptcy cases was not abridged by *Marathon.* *Nashville City Bank & Trust Co. v. Armstrong (In re River Transp. Co.),* 9 C.B.C.2d 986 (B.Ct., Tenn.1983).